**In re Lynnel L. JONES, Debtor.**

**Bankruptcy No. 4–85–946.**

United States Bankruptcy Court,
D. Minnesota.

Nov. 5, 1985.

ORDER

MARGARET A. MAHONEY, Bankruptcy Judge.

The above-entitled matter came on for hearing on the motion of unsecured creditor Dennis Johnson (Creditor) objecting to confirmation of the Debtor's chapter 13 plan. At the hearing two other matters were raised. The Trustee objected that the Debtor was not an appropriate chapter 13 debtor. The Debtor claimed attorneys fees from Creditor. For the reasons outlined below, I am: (1) denying confirmation of Debtor's Chapter 13 plan on the basis of Creditor's objections, (2) denying the Trustee's objection, and (3) denying Debtor's claim for attorney's fees.

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157. This is a core proceeding pursuant to § 157(b)(2)(L).

## FACTS

Lynnel L. Jones (Debtor) filed a chapter 13 petition on May 14, 1985. At that time Debtor was an unemployed lawyer, formerly of the firm of Lynnel L. Jones & Associates, P.A.

Debtor has three children aged 12, 14 and 18 years. Two of them live with the Debtor and her husband on a full-time basis. The eldest child attends Carleton College in Northfield, Minnesota. Debtor's husband suffers from Parkinson's Disease, and receives $2,000 per month in disability income. Since the date of the petition, the Debtor and her family have moved from Minnesota to the State of Kentucky, where Debtor is currently employed.

Debtor's chapter 13 statement indicates that current income, including her husband's disability income, is $4,324.00 per month. Debtor's monthly expenditures,[1] as estimated by her, are:

Lynnel L. Jones, LaGrange, Ky., pro se.

J.J. Mickelson, Minneapolis, Minn., trustee.

Michael Moriarity, St. Paul, Minn., for Creditor Dennis Johnson.

1. Since the filing of the chapter 13 plan and statement, the Debtor and her family have moved to the State of Kentucky. Despite this change of residence, the Debtor has testified that the budget amounts contained in the statement are essentially accurate and remain a true reflection of her financial situation. Based on Debtor's testimony in this regard I am basing my decision in this case on the figures contained in the Debtor's chapter 13 statement.

| | |
|---|---|
| House Payment | $989.00 |
| Utilities | $230.00 |
| Food | $515.00 |
| Clothing | $250.00 |
| Laundry and Cleaning | $ 40.00 |
| Periodicals and Books | $ 30.00 |
| Husband's Medical Expenses | $200.00 |
| Insurance: Auto | $ 50.00 |
| Health | $250.00 |
| Transportation | $110.00 |
| Recreation | $ 0.00 |
| Real Estate Taxes | $165.00 |
| Son's College Tuition | $500.00 |
| Secondary School Tuition | $500.00 |
| Household Insurance | $ 30.00 |
| Car Payment | $174.99 |
| Student Loan | $143.55 |
| | |
| TOTAL MONTHLY EXPENSE | $4,177.54 |

The Debtor's chapter 13 plan indicates total unsecured debts of approximately $66,000. However, as listed in Debtor's statement, total undisputed, unsecured claims amount to $56,744.32. The payment provisions in this plan refer to this amount, not the $66,000 estimate. Debtor's undisputed, unsecured creditors are:

| | |
|---|---|
| Fifth Norwest Bank-Calhoun Isles | $12,776.50 |
| Dennis J. Johnson | $29,327.82 |
| Loring Hill Partnership | $14,640.00 |
| Total | $56,744.32 |

In addition, Debtor lists a disputed, unsecured claim by James Beal in an amount stated to be in excess of $50,000.[2]

The plan proposes that the unsecured creditors shall receive 13.95 percent of their claims, amounting to $7,915.80. The amount is to be paid over a five year period in monthly installments of $131.93 plus 10 percent for the Trustee. The total proposed monthly payment under the plan is $146.46, that being the amount of disposable monthly income projected by the Debtor.

Dennis J. Johnson (Creditor) is an unsecured judgment creditor of Debtor. He raises several objections to the Debtor's chapter 13 plan, and moves that the plan not be confirmed. He further moves that the chapter 13 proceedings be dismissed due to bad faith and fraud on the Debtor's part.

At the hearing on October 3, 1985, the Trustee questioned whether the Debtor was eligible to file under chapter 13. He suggested that if the disputed claim of James Beal is included in unsecured debt, that amount could exceed the 11 U.S.C. § 109(e) limitation of $100,000 in unsecured debt for chapter 13 debtors. Also at the hearing, Debtor claimed attorneys fees from Creditor, arguing that Creditor's persistent allegations of fraud had proved to be totally without merit. She alleged that the allegations had been brought in bad faith and solely for the purpose of harassing her.

## DISCUSSION

### I.

Creditor has raised seven objections to Debtor's chapter 13 plan. Six of the seven objections (Nos. 1, 2, 3, 4, 5 and 7)[3] were wholly unsupported by the evidence presented by Creditor at the hearing or, if true, are of no consequence to confirmation of Debtor's plan. Accordingly, I find that Creditor failed to meet his burden of proof in regard to those six objections, and they are hereby denied. None of Creditor's objections supported a dismissal of Debtor's

---

**2.** The Beal claim is apparently a tort claim against the Debtor for alleged legal malpractice *inter alia.* No copies of the State district court lawsuit complaint were ever furnished to me nor was the suit ever fully explained. However, no evidence contradicts the Debtor's statements that the suit is disputed, contingent and unliquidated at this point.

**3.** These objections are:
  1. Debtor listed her student loan as a secured debt and it is really an unsecured debt.

2. Debtor had an equity in a vendee's interest in a Contract for Deed upon which she defaulted.
3. Debtor had rental income which was not reported.
4. Debtor is employed and her schedules list her as unemployed.
5. Debtor has sold her home but still claims housing expenses.

\* \* \* \* \* \*

7. Debtor took a trip and failed to list the cost in her schedules.

case on grounds of fraud or bad faith and I am accordingly denying that request.

Creditor's remaining objection, however, warrants further inquiry.

■ Creditor objects to Debtor's listed monthly expenditures of $500.00 for her eldest son's college tuition, and $500.00 for one of her younger children's secondary school tuition. He contends that these expenditures are not "reasonably necessary" for the support or maintenance of the Debtor or a dependent of Debtor within the meaning of 11 U.S.C. § 1325(b)(1) and (2).

The relevant portions of section 1325 provide:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

> (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

> (A) for the maintenance or support of the debtor or a dependant of the debtor.

These provisions are part of the new section 1325(b) which was added to the Bankruptcy Code by Congress in 1984. The new subsection incorporates into chapter 13 the "ability to pay" test, which requires debtors to pay as much as they are able, but only as much as they are able, into the plan. As a result, a debtor's chapter 13 plan cannot be confirmed over the objections of an allowed unsecured creditor unless the debtor proposes to pay all of his or her projected disposable income for the chapter 13 period into the plan. *See generally,* 5 *Collier on Bankruptcy,* ch. 1325, ¶ 1325.01 at 1325–42 (15th ed. 1985).

The basic question is, therefore, whether Debtor has proposed to pay all of her projected disposable income into the plan. The definition of "disposable income" in section 1325(b)(2) leads me to the dispositive issue in this matter, which is whether the Debtor's listed monthly expenditures are reasonably necessary for the maintenance or support of the Debtor or the Debtor's dependents.

By raising this issue, Creditor's objection leads me onto new ground. There appear to be no cases dealing with section 1325(b)(2)(A) or the standard to be applied thereunder. Furthermore, the legislative history to section 1325(b) is singularly vague and unenlightening. As a result, the immediate question is what standard is to be applied in determining the portion of a debtor's income that is not reasonably necessary for the maintenance or support of the debtor or the debtor's dependents.

The legislative history, such as there is, expressly leaves the development of an appropriate standard to the courts. Chapter 13, it states, "contemplates a substantial effort by the debtor to pay his debts", and furthermore, "[s]uch an effort may require some sacrifices by the debtor." S.Rep. No. 65, 98th Cong. 1st Sess. 22 (1983). Where, as here, Congress has provided little guidance as to the meaning of a statutory provision, the courts must employ other methods of construction to determine that meaning.

It is a generally accepted rule that Congress is presumed to have used statutory terms in their judicially established meaning. *United States v. Merriam,* 263 U.S. 179, 44 S.Ct. 69, 68 L.Ed. 240 (1923). It follows that if words used in a statute have acquired a settled meaning through judicial interpretation, and the same terms are used in a subsequent enactment upon the same or an analogous subject, they are to be interpreted in the latter statute as they were in the former unless a contrary intent is made clear by the legislature. *See,* 73 Am.Jur.2d *Statutes* § 165 (1974) and cases cited there. Thus, if similar terms can be found used to similar purpose in the Bank-

ruptcy Code, guidance may be taken from the judicial interpretations of those terms.

Fortunately, the provision contained in section 1325(b)(2)(A) is not unique in the Bankrupcy Code. Similar provisions are found in sections 522(d)(10)(E) and 523(a)(2)(C).

Section 523 deals with exceptions to the discharge provisions under chapters 7, 11 and 13. Subsection (a)(2)(C) provides that certain consumer debts for "luxury goods or services" are nondischargeable. "Luxury goods or services" is defined as "goods or services [not] reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor." Extending this definition to section 1325(b)(2)(A) would provide a standard which excludes expenditures for luxury goods or services. I think this is clearly appropriate, but it falls short of providing a workable standard to be applied under section 1325.

Section 522(d)(10)(E) exempts from the property of the estate in bankruptcy certain benefit payments made to a debtor "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." The "reasonably necessary" standard in section 522(d)(10)(E) was first interpreted in *In re Taff,* 10 B–R. 101, 4 C.B.C.2d 65 (Bktcy.D.Conn.1981). *Taff* involved a chapter 7 debtor who was seeking to exempt payments received by him under a pension plan. The pension payments could only be exempt if they were reasonably necessary for the support of the debtor or a dependent of the debtor. In holding that the payments were not exempt, the court was called upon to interpret the "reasonably necessary" provision under § 522(d)(10)(E). After a thorough examination of the legislative background to the exemption and of exemption laws in general, the court decided that:

> ... the reasonably necessary standard requires that the Court take into account other income and exempt property of the debtor, present and anticipated ... and that the appropriate amount to be set aside for the debtor ought to be sufficient to sustain basic needs not related to

[the debtor's] former status in society or the life style to which he is accustomed ... (Parentheses added). *In re Taff, id.,* at 107, 4 C.B.C.2d 65, 70 (1981).

Since 1981, the *Taff* standard has been embraced by the courts in several cases involving section 522(d)(10)(E). I adopted and applied it in *In re Bari,* 43 B.R. 253 (Bktcy.D.Minn.1984). Other cases include *In re Phillips,* 45 B.R. 529 (Bktcy.N.D.Ohio 1984); *In re Miller,* 33 B.R. 549 (Bktcy.D. Minn.1983); and *In re Kochell,* 26 B.R. 86 (Bktcy.W.D.Wis.1982), *affirmed,* 31 B.R. 139 (1983), affirmed 732 F.2d 564 (7th Cir. 1984).

■ I find the *Taff* construction of section 522(d)(10)(E) to be compelling in the present case. Section 522(d)(10)(E) and section 1325(b)(2)(A) are similar in so far as they both provide the opportunity for a debtor to retain certain income for his or her own needs. In doing so, they both limit the extent of this retention to that which is reasonably necessary for the maintenance or support of the debtor or a dependent of the debtor. In view of this essential similarity between the two sections, I think the standard to be applied under them should be the same. Furthermore, as I see it, the purpose of chapter 13 is to provide the maximum recovery to creditors while at the same time leaving the debtor sufficient money to pay for his or her basic living expenses. The "reasonably necessary" standard set out by the court in *In re Taff, supra,* is in accord with my views. Accordingly, I am adopting that standard and applying it to the present matter arising under 11 U.S.C. § 1325(b).

■ Before I consider the Debtor's listed monthly expenditures under this standard, I need to note that Creditor has objected only to the $500 college tuition expense and the $500 secondary school expense. Under section 1325(b), however, it is the court's duty to consider the listed expenditures individually and as a whole to determine whether the debtor has proposed to pay all of his or her disposable income into the plan. Accordingly, I am not limited in my inquiry by the scope of Creditor's objection.

Rather, it is my duty to examine Debtor's entire budget.

Applying the "reasonably necessary" standard to the Debtor's listed monthly expenditures, I find that the list includes several items that are not within the standard. The $500 per month for college tuition, and the $500 per month for secondary school tuition are both excessive. An expensive private school education is not a basic need of the Debtor's dependents, particularly in view of the high quality public education available in this country at both the collegiate and secondary school levels. The $515 per month that Debtor claims for food for a family of four[4] is high in my judgment. Lastly, the monthly house payment of $989 is well above the amount necessary to provide adequate housing for a family of four.

Debtor has listed monthly income in the amount of $4,324.00. Her claimed monthly expenditures amount to $4,177.54. After considering the Debtor's listed monthly expeditures and the circumstances of this case, I find that the Debtor reasonably needs $3,800 for the maintenance or support of herself or her dependents.

In order for me to confirm Debtor's chapter 13 plan over the objections of Creditor, the plan must have proposed to apply all of Debtor's disposable income for the five-year period to payments under the plan. Debtor's plan proposes to apply $131.93 per month to payments under the plan. I find that the proper amount should be $510 per month. Accordingly, I am denying confirmation of the Debtor's chapter 13 plan as presently constituted.

There are two other issues raised in this case. The trustee questioned whether the Debtor qualifies for Chapter 13. 11 U.S.C. § 109(e) states:

"only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 ....."

may be a debtor under Chapter 13 of this title."

In this case, Debtor has $56,744.32 in non-contingent, liquidated, unsecured debts. She has one contingent, unliquidated unsecured debt to James Beal. The debt to Beal may be a debt of more than $50,000. However, since it is contingent, it is not aggregated with Debtor's other unsecured debts for purposes of determining Debtor's qualification for Chapter 13. Debtor does qualify for the protection of Chapter 13.

Finally, Debtor requests attorney's fees from Creditor. Debtor alleges that she has incurred $6,786.78 in fees and expenses. She wants these fees deducted from her debt due and owing to Creditor and wants her monthly plan payments decreased due to this reduction in Debtor's debt.

Debtor requests fees incurred due to Creditor's objection to Debtor's homestead exemption and sale of the same. Although inartfully framed and argued, Creditor did have a right to raise the issues he did under 11 U.S.C. § 363 and 11 U.S.C. § 522. A debtor must be prepared to meet such objections. To allow attorneys fees to debtors where creditors motions are denied would discourage creditors from policing debtors' activities. The Code does not provide for fee awards in situations like this. It should not.

Accordingly, based on all the files, records and testimony herein,

IT IS ORDERED that:

1. The confirmation of debtor Lynnel L. Jones' plan dated May 14, 1985 and amendment dated September 11, 1985, is denied.

2. Debtor's motion for attorneys fees is denied.

3. All other motions of all parties are denied.

---

**4.** Debtor's family consists of five members. However, the eldest son attends college in the State of Minnesota while his family's home is in the State of Kentucky. I am presuming that the son is a part-time resident, or entirely non-resident, dependent of the Debtor. Therefore, the appropriate size of Debtor's family to be considered is four members.