**In re Emma Lee WEBSTER.**

**Bankruptcy No. 93–14869–T.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

March 10, 1994.

Ann M. Hayes, Lindsay & Hayes, P.C., Warrenton, VA, for debtor.

Gerald M. O'Donnell, Alexandria, VA, Chapter 13 Trustee.

Robert K. Coulter, Asst. U.S. Atty., Office of U.S. Atty., Alexandria, VA.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Hearing was held on February 16, 1994, on objection by the chapter 13 trustee and the Farmers Home Administration to confirmation of the debtor's chapter 13 plan.

The court will deny confirmation.

### Facts

The facts are not in dispute.

The debtor filed this chapter 13 case on November 22, 1993.

Prepetition the debtor had formerly resided in a home owned by her on two acres of land in Fauquier County, Virginia. This realty was encumbered by a deed of trust held by the Farmers Home Administration.

Sometime prior to November 1993 debtor's residence was completely destroyed by fire, and debtor moved to other quarters where she lived at the time of filing her bankruptcy petition and where she expects to reside for the foreseeable future.

As a result of the fire, an insurance recovery in the amount of $20,000.00 was paid to FmHA on November 24, 1993. FmHA has filed a proof of claim in this bankruptcy case in the amount of $59,563.17. This is the approximate balance remaining on the debtor's residential deed of trust loan (net of the $20,000.00 insurance payment).

Debtor's chapter 13 petition and plan reflect that she has total unsecured debt (exclusive of FmHA's balance) of $12,511.49, the FmHA debt, a secured auto loan of $460.00 and a real estate tax debt of $197.96. In addition, FmHA's counsel informed the court

that the Internal Revenue Service has a substantial tax claim against Ms. Webster.

The debtor lists total assets of $23,500.00 of which $20,000.00 represents her estimate of the value of the land upon which her home was located.

Debtor's plan provides for payment of just two debts:

(1) The $460.00 auto loan will be paid directly by debtor.

(2) The FmHA claim will be paid through the chapter 13 trustee a total sum of $20,000.00 at the rate of $405.53 per month for 60 months.

Thus debtor proposes to modify FmHA's rights by treating the claim as partially unsecured (cram down) and to pay nothing toward any unsecured claims (or any IRS tax claim).

### Objection to Confirmation

FmHA and the chapter 13 trustee object to confirmation primarily because the plan seeks to modify FmHA's rights as a holder of a deed of trust on the debtor's former principal residence in violation of 11 U.S.C. § 1322(b)(2). Additionally the trustee asserts that the plan violates 11 U.S.C. § 1322(b)(1) because it unfairly discriminates among classes of claims.[1]

### Conclusions of Law

The controversy here concerns primarily the provision of debtor's chapter 13 plan by which FmHA's claim (presently approximately $59,500.00) will be paid only to the extent of the alleged fair market value ($20,000.00)

of a parcel of land upon which was formerly located debtor's principal residence.

FmHA argues that the debtor is thus proposing to "cram down" a deed of trust secured only by a security interest in real property that was the debtor's principal residence in contravention of 11 U.S.C. § 1322(b)(2). See Nobelman v. American Sav. Bank, ⸺ U.S. ⸺, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

FmHA's position is based upon its argument that the status of realty as the debtor's principal residence is fixed at the time the deed of trust loan is made. Debtor argues that the status of the debtor's principal residence is fixed at the date of debtor's filing a bankruptcy petition.

However, as challenging as the above issue may be, I find it unnecessary to be resolved here since there is a much more direct basis for denying confirmation.

■ Although the parties objecting to confirmation have not raised the issue of debtor's good faith, I believe it is incumbent on the court in this type of hearing to determine that the debtor's plan has been proposed in good faith as required by 11 U.S.C. § 1325(a)(3).[2]

■ I have previously denied confirmation of chapter 13 plans where debtors proposed to pay for nonessential assets to the detriment of creditors.[3] Here debtor proposes to pay nothing to her unsecured creditors; instead she wants to pay for a $20,000.00 asset which at this time may be considered investment property. The plan is thus discrimina-

---

1. The trustee also objected on the basis that the debtor lacks the financial ability to comply with the plan. However, the trustee withdrew this objection at hearing.

2. In Tillman v. Lombard, 156 B.R. 156 (E.D.Va. 1993), the district court, in ruling that a chapter 13 debtor has the burden to establish the confirmability of a plan, stated that the bankruptcy court "must scrutinize every proposed plan, regardless of whether someone objects." 156 B.R. at 159.

   As a practical matter, since the adoption of Local Rule 313(E) on January 4, 1988, hearings on confirmation of chapter 13 plans are held in this district only where an objection to confirmation has been filed. L.R. 313(E), Rules of Prac-

tice, U.S. Bankruptcy Court, Eastern District of Virginia, adopted by Standing Order Adopting Local Rules, No. 87–4 (Bankr.E.D.Va. Jan. 4, 1988). See In re Walat, 87 B.R. 408 (Bankr.E.D.Va.), aff'd, 89 B.R. 11 (E.D.Va.1988).

   Consequently, in this district the bankruptcy judge ordinarily will see only those chapter 13 plans that come up for hearing on objection to confirmation. The result then is that in most instances the chapter 13 trustee must determine whether a plan has been proposed in good faith.

3. Examples include plans which proposed to pay for a recreational boat or for an extra, nonessential motor vehicle.

tory of debtor's creditors and cannot be considered as filed in good faith.

■ The trustee's objection to confirmation of the plan provides an additional basis for denial. Upon objection by the trustee or an unsecured creditor, § 1325(b)(1)(B) prohibits confirmation of a chapter 13 plan unless the debtor devotes all disposable income to the plan.[4]

■ Case law in the Eastern District of Virginia supports the assertion that retention of nonessential or luxury items in a chapter 13 plan to the detriment of unsecured creditors fails the disposable income test, requiring denial of confirmation. *E.g., In re Scott,* 142 B.R. 126 (Bankr.E.D.Va.1992) (debtor's plan proposed $790.36 payment into pension plan, while at the same time paying only 17 percent to unsecured creditors); *In re Hedges,* 68 B.R. 18 (Bankr.E.D.Va.1986) (debtor proposed to pay in full, through his chapter 13 plan, the debt owed on his boat, while paying other unsecured creditors 45 percent).

In the instant case debtor wishes to retain investment property while paying nothing to unsecured creditors. The plan violates § 1325(b)(1) and cannot be confirmed.

The clerk is directed to submit a standard order denying confirmation of the debtor's chapter 13 plan.

---

4. The section reads:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

. . . . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under tha plan will be aplied to make payments under the plan.

11 U.S.C. § 1325(b)(1).
Disposable income for purposes of this subsection consists of:
income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2).