In re Theodore R. VINCENT,
Jr., Debtor.

No. 99–24213–DHA.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

June 2, 2000.

Richard S. Harman, Norfolk, VA, for Debtor.

Frank J. Santoro, Marcus, Santoro, Kozak & Melvin, P.C., Portsmouth, VA, trustee.

## MEMORANDUM OPINION
## AND ORDER

DAVID H. ADAMS, Bankruptcy Judge.

This matter is before the Court on the debtor's Motion to Compel the Chapter 13 trustee to pay Transouth Financial Services [Transouth] the uncontested secured value of its collateral at the rate of 8%, the interest rate proposed in the confirmed Chapter 13 Plan. The Court has jurisdiction over the issues presented pursuant to 28 U.S.C. Section 157(b)(2) and 28 U.S.C. Section 1334(b). The issues presented require the Court to interpret the form plan, motions and notice thereof required under Local Bankruptcy Rule 3015–2 implemented May 1, 1998.

### FINDINGS OF FACT

The debtor filed for relief under Chapter 13 of the Bankruptcy Code on June 21, 1999. On July 13, 1999 the debtor filed his form *"NOTICE OF CHAPTER 13 PLAN AND RELATED MOTIONS"* together with a Plan Summary. An order of confirmation of the Chapter 13 plan was entered on February 4, 2000 after the objection of the trustee relating to the treatment of the debt due Transouth was withdrawn. The plan provided for payment to Transouth of 100% of the present fair market value of

its collateral, a 1976 Buick Le Sabre, valued by the debtor at $900.00. The debtor also proposed to pay Transouth interest on the secured portion of its debt at the rate of 8% per annum. The trustee objected to confirmation of the debtor's plan on the basis that the debtor had failed to prove that 8% is the market rate of interest for loans similar to Transouth's loan to the debtor.[1] Transouth filed a proof of claim on October 14, 1999, long before the plan was confirmed, claiming the full amount due as $4,934.40 and claiming interest at the contract rate of 26.99%. However, Transouth never objected to its treatment under the plan.

On February 11, 2000, the debtor filed the motion *sub judice*. The debtor objected to the trustee's payment of the claim at the higher, contract rate of interest set out in the proof of claim, as opposed to the interest rate established by the debtor in his confirmed plan. The parties do not disagree that the value of the collateral is $900 and that Transouth is a secured creditor only to that extent. The trustee asserts that the secured creditor is to be paid in accordance with the interest rate stated in its proof of claim [the contract rate of interest], unless the debtor presents affirmative evidence of a different, market rate of interest. The debtor presented no such evidence in this case, relying on the clear statements in the plan and notice, and on the fact the plan was confirmed without objection from Transouth. A hearing on the matter was held and the Court took under advisement the issues of the appropriate interest rate, the burden of proof relating to it and the governance of the trustee's payments to the creditors.

## CONCLUSIONS OF LAW

■ The primary issue presented is whether a confirmed plan governs the payments made by the Chapter 13 trustee, or whether an allowed claim under § 502 controls what is paid to the creditor, based on the proof of claim filed to assert its claim. 11 U.S.C. § 502(a) provides: "A claim or interest, proof of which is filed under section 501 of the title, is deemed allowed, unless a party in interest ... objects." Transouth filed a proof of claim setting forth a debt due of $4,934.40, of which $900 was secured, bearing interest at the rate of 26.99% per annum. The debtor filed no objection to the proof of claim filed by Transouth. Therefore, in accordance with § 502(a), the claim of Transouth in the secured amount of $900, together with interest at 26.99% is *apparently* an allowed claim in this Chapter 13 case. However, the analysis does not end there.

The Bankruptcy Code, at § 1326(a)(2), provides that the Chapter 13 trustee should promptly begin distributions in accordance with the provisions of a confirmed plan: "If a plan is confirmed, the trustee shall distribute any such payment [received from the debtor] in accordance with the plan *as soon as practicable*." The debtor's plan was confirmed without objection by order entered February 4, 2000, almost two months after Transouth filed its proof of claim. Nothing had been done to contest the interest rate set forth in the Transouth proof of claim and the creditor did not object to confirmation of the debtor's plan.

The debtor's plan, in section B–3a, indicates that the Transouth claim of $5,326 is to be paid through the plan, and that the

---

1. The Court notes that the Chapter 13 trustee did not present to the Court for entry the customary Order Approving Claims, pursuant to § 502(a), directing the trustee to pay listed claims in the amounts and at the interest rates set forth therein, which order affords the debtor an opportunity to object to any proof of claim filed in the case and hence to the trustee's proposed scheme of distribution to claimants. The Order Approving Claims also deals with amended claims and later filed claims by creditors, and any debtor filed objections thereto, but was not utilized in this case.

collateral has a replacement value of $900, which shall bear interest at 8% per annum. The debtor then included in that section of his plan the following language:

> The debtor hereby moves to value the collateral at $900.00 in accordance with 11 U.S.C. § 506(a) and L.B.R. 3015–2, and *debtor hereby also moves to establish the interest rate to be paid on this value of collateral in order to maintain the present value, at 8%*. (Emphasis added).

The plan was served on all of the creditors and contains the additional notice:

> *Notice of Chapter 13 Plan And Related Motions*
>
> Notice of: ...
>
> 2) MOTION FOR VALUATION\*
>
> 3) MOTION TO ESTABLISH THE INTEREST RATE REQUIRED TO MAINTAIN THE PRESENT VALUE OF COLLATERAL\* ...
>
> Any creditor whose collateral is to be valued, whose lien is to be avoided, whose interest rate required to maintain present value of collateral is to be established ... must receive an individually addressed notice **and must be served in accordance with Federal Rule of Bankruptcy Procedure 7004.**

| Name of Creditor | Description of Collateral | Value Assigned by Debtor | Interest Rate | Estimated Balance of Credit |
|---|---|---|---|---|
| Transouth Fin. | 1976 Buick LeSabre | $900.00 | 8% | $5,326.00 |

The debtor's plan clearly sets forth the debtor's treatment of the Transouth claim. The Plan and Related Motions was filed July 13, 1999 and was confirmed on February 4, 2000. Transouth did nothing more than file a proof of claim setting forth the interest rate claimed as 26.99%.

This Court is satisfied that the Plan and Related Motions complies with the notice and due process mandates of the Fourth Circuit's ruling in *Piedmont Trust Bank v. Linkous, etc.,* 990 F.2d 160 (4th Cir.1993). The Fourth Circuit held, *inter alia,* that a bankruptcy court confirmation order is *res*

There is no allegation in this case that the debtor failed to comply in any respect with the terms or requirements of the form plan or the required service of notice of the related motions as approved for use in the Eastern District of Virginia. [See LBR 3015–2 and Exhibits 1 and 2 to the Local Rules of Bankruptcy Procedure]. The trustee and the creditors were given ample notice of the debtor's intentions relative to the proposed treatment of the Transouth secured debt.

The debtor's form plan and motions complied with LBR 3015–2(A)(1)(a):

> (a) *Motion for Determination of Value Pursuant to 11 U.S.C. § 506(a):* In order to obtain a determination of the value of a claim or collateral pursuant to 11 U.S.C. § 506(a), a debtor may include such motion in the Chapter 13 Plan and Related Motions (Exhibit 1).

The debtor's Plan and Related Motions contained the following relevant language:

> 1. The Chapter 13 Plan and Related Motions propose to value the claims of the following creditors, and to establish the interest rate required to maintain the present value of the collateral, as follows:

*judicata* based on 11 U.S.C. § 1327(a). The Fourth Circuit also cited the Supreme Court decision of *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950): "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Therefore, the confirmation order of February 4, 2000 is *res judicata* and is binding on Transouth. Thus, the plan interest rate

for its secured debt is 8% and is binding on the creditor and the Chapter 13 trustee.

 The issue of whether the interest rate can be set by default, that is alleviating the debtor's necessity of establishing the market rate of interest for the secured loan he proposes to repay through the plan, follows from the foregoing discussion. This Court has routinely ruled that the contract rate of interest is presumptively the proper rate to be paid to the secured creditor. The debtor must establish the market rate of interest for similar loans in his market area when the secured creditor properly challenges an otherwise proposed interest rate; it is the debtor's burden to rebut that presumption. When the issue of the interest rate is raised, in order for the debtor to deviate from the contract rate of interest, he must prove the market rate of interest by a preponderance of the evidence. However, if the creditor, with sufficient notice of the treatment of its claim as outlined above, does not object to confirmation of the debtor's plan, the rate proposed in the plan governs the repayment of the debt. Thus, the rate of interest may be established by default based on the creditor's failure to challenge the rate set by the debtor in the form plan dictated by Local Bankruptcy Rule 3015–2 and utilized by the debtor in this case.

 The mere filing of a proof of claim does not put the rate in issue, and the trustee must follow the Code, which requires the payment of allowed claims as established by adherence to § 506. It was the intent of Congress that the trustee begins making payments to creditors as soon as possible:

Currently, the practice of making payouts under a chapter 13 plan varies from one court to another. This section [§ 1326(a)(2)] clarifies Congressional intent that the trustee should commence making the payments 'as soon as practicable' after the confirmation of the chapter 13 plan. Such payments should be made even prior to the bar date for filing claims, but only if the trustee can provide adequate protection against any prejudice to later filing claimants caused by distributions prior to the bar date. (HR Rep. 103–834, 103rd Cong., 2nd Sess. 40 (Oct. 4, 1994); 140 Cong.Rec. H10770 (Oct. 4, 1994))

The trustee's practice in this District is to make plan payment distributions according to the proofs of claim filed in the chapter 13 case. That practice comports with the intent of Congress so long as the debtor does not make a proper motion to value the secured creditor's collateral or to repay the secured portion of its loan at other than the contract rate, as happened in this case. Payments by the trustee should commence based upon the terms of the confirmed plan in the amounts stated in the proofs of claim, unless the debtor has filed the "related motions" or the parties have done something to bring the issues of valuation or the applicable interest rate before the court. The plan provisions govern the payments to be made by the trustee unless and until a creditor or the trustee in contravention files an objection to confirmation of the plan. If uncontested, the creditor's proof of claim determines the amount of its claim and the confirmed plan determines the treatment of the claim. Upon objection, the court must determine if the debtor's treatment of a specific claim complies with the Code, and it is then the debtor's burden to prove the market value of the collateral and the market rate of interest on the debt. Congress recognized this proposition in the 1994 amendment to § 1326(a)(2), as cited above, in requiring early payments by the trustee according to the Chapter 13 plan, but providing for modifications in those payments based on later filed claims. In the case of later filed claims, it is the creditor's or the trustee's burden to bring before the court the issue of the claimed value and the interest rate as opposed to the debtor's treatment of the claim in the plan.

 Upon the raising of a claim issue by the creditor or the trustee, the debtor must support his plan-proposed col-

lateral valuation and interest rate by making an affirmative showing that the value of the collateral and the interest rate he proposes to pay provides the creditor with the present value of its claim as required by the Code and the prevailing case law. See *United Carolina Bank v. Hall*, 993 F.2d 1126 (4th Cir.1993), at page 1131. It is well established that the debtor bears the burden of demonstrating that a proposed Chapter 13 plan meets all the requirements for confirmation. *Tillman v. Lombard*, 156 B.R. 156 (E.D.Va.1993). The debtor therefore bears the burden of demonstrating to the court that the plan complies with all the provisions of 11 U.S.C. § 1325, namely that the plan provides that the holder of a secured claim is to receive the allowed amount of its claim. 11 U.S.C. § 1325(a)(5)(B)(i)–(ii); *In re Galvao*, 183 B.R. 23 (Bankr.D.Mass.1995); *In re Harris*, 167 B.R. 813 (Bankr.D.South Carolina 1994). There is no question that the appropriate rate of interest is that rate which is prevalent in the secured creditor's current lending market. *United Carolina Bank*, at page 1130. The issue before us is whether the debtor must bear the burden of showing that the interest rate he proposes is the appropriate rate under *United Carolina Bank, supra*. The debtor here properly argues that, because Transouth did not object to debtor's plan and therefore failed to properly raise the issue that the contract rate is the interest rate applicable to its claim, the rate set out in the plan governs the repayment of the Transouth secured debt. By filing its proof of claim, the creditor has simply set forth what it believes to be the amount of the claim and the appropriate rate of interest, unlike a situation in which no proof of claim is filed.

The creditor must file a proof of claim in order to participate in the distributions by the Chapter 13 trustee. However, Transouth has not sufficiently raised the issue of the proper interest rate to be paid on its claim merely by filing a proof of claim. In order to contest the plan rate of interest, Transouth or the trustee should have objected to confirmation of the debtor's plan. The burden of proof to support the rate of interest to be paid to Transouth on the secured portion of its claim was not thrust upon the debtor because of the failure to do what is necessary to put the issue before the court. Since Transouth never put the issue of the debtor's treatment of its claim before the court, the debtor's plan provisions for the Transouth claim control the distributions to be made by the trustee to Transouth.

■ A contrary holding would result in the court placing the affirmative burden of persuasion on the creditor or the trustee, which is not in harmony with the provisions of the Bankruptcy Code. After all, it is the debtor who is trying to alter the interest rate he agreed to pay Transouth when he made the loan secured by the 1976 Buick. Therefore, it is the debtor's burden to prove that his treatment of the creditor's claim is fair under the circumstances, if challenged by the creditor or the trustee. If the creditor does nothing to contest the debtor's treatment of his claim, the debtor prevails because of the failure of the creditor to properly raise the issue before confirmation of the plan. The Code and case law requires the debtor come forth with evidence that the rate he proposes is proper under current market conditions, only when the terms of his form plan and related motions are properly contested.

■ Based upon the clear language of § 1302, it is proper for the trustee to challenge the interest rate or collateral valuation proposed in the debtor's plan, and he has standing to do so pursuant to § 1302(b)(2). The trustee's duties set forth in § 1302 and § 704(5) include evaluating the terms of the debtor's plan and the claims filed by creditors. The protestations to the contrary by the debtor are without merit. However, in this case the trustee withdrew his Objection to Confirmation, so the plan terms prevail without having been challenged.

## CONCLUSION

The absence of any objection to the valuation of the collateral or to the 8% rate of interest to be applied in this case means that the trustee is obligated to pay interest on the claim as provided for in the debtor's plan and not in accord with the creditor's proof of claim. The Motion to Compel must therefore be GRANTED.

**IT IS SO ORDERED.**